# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY DUGDALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 14-CV-1175 (CRC) |
| UNITED STATES CUSTOMS AND | ) | |
| BORDER PROTECTION, *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

The Defendants move the Court to dismiss the Petition with prejudice because the Court lacks jurisdiction to entertain the Plaintiff's arguments, which fit into four categories. First, Plaintiff asks in various ways for this Court to declare him a United States citizen, which appears to be his ultimate contention. Second, Plaintiff attempts to launch a systemic challenge of expedited removal under 8 U.S.C. 1252(3). Third, Plaintiff attempts to challenge the expedited removal order applied to him. Finally, Plaintiff requests miscellaneous relief such as parole into the United States from Canada. The Court lacks jurisdiction to address all four arguments on a habeas corpus review of the expedited removal order entered against Plaintiff and should dismiss them under Fed. R. Civ. P. 12(b)(1) for a lack of subject matter jurisdiction. Further, Plaintiff's arguments fail to state a claim and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Regarding what appears to be Plaintiff's primary claim, a request for citizenship, the Court lacks both jurisdiction to reach the merits and, ultimately, the equitable power to grant Plaintiff's request. Plaintiff claims, "I am a United States citizen" and lists various statutes, rules, and cases in an apparent attempt to create a valid cause of action. ECF No. 1 at 7. However, beyond Plaintiff's conclusory assertion, he adduces no supporting facts or evidence.

In fact, Plaintiff makes no mention of a sworn statement in which he admitted that he is not a U.S. citizen and has no valid claim to citizenship. *See* Exhibit 1. Likewise, Plaintiff adduces no facts to support an argument for derivative citizenship. Thus, because Plaintiff fails to raise a colorable claim of citizenship status, this Court lacks jurisdiction to proceed further.

The Court also lacks jurisdiction to consider Plaintiff's other claims, including Plaintiff's time-barred attacks on the expedited removal system. *See Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998), *aff'd by American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000). Likewise, Plaintiff's attack on his own expedited removal order is barred by 8 U.S.C. § 1252(e)(2)(B). Plaintiff's request for parole also fails as a matter of law. *See, e.g.*, *Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009) ("[T]he [Supreme] Court has, without exception, sustained the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms."), *reinstated by* 605 F.3d 1046 (D.C. Cir. 2010).

Therefore, this Court should dismiss the Petition with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: September 29, 2014

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

AARON S. GOLDSMITH
Senior Litigation Counsel

s/ Dillon A. Fishman
DILLON A. FISHMAN
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
AZ Bar No. 024259
Telephone: (202) 532-4114
Facsimile: (202) 305-7000
E-mail: Dillon.A.Fishman@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TIMOTHY DUGDALE,                            )
                                            )
                        Plaintiff,          )
                                            )
            v.                              )
                                            )  Civil Action No. 14-CV-1175 (CRC)
UNITED STATES CUSTOMS AND BORDER )
PROTECTION, *ET AL.*,                       )
                                            )
                        Defendants.         )
                                            )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

In this action, Plaintiff raises arguments dismissed in one district court and three circuit court cases. Here, Plaintiff potentially raises six principal claims. First, he appears to argue that this Court should use its equitable powers to declare him a citizen. This argument fails as a matter of law because federal courts lack the equitable power to confer citizenship. *See I.N.S. v. Pangilinan*, 486 U.S. 875, 884-85 (1988). Second, to the extent that he is, in the alternative, claiming that he is already a U.S. citizen, he fails to raise a colorable claim of citizenship and his request should be dismissed as a matter of law. Third, to the extent that he seeks to assert a core habeas claim under 28 U.S.C. § 2241, his claim fails as a matter of law because he is not in custody. Fourth, to the extent that he is asserting a systemic challenge to the expedited removal system, his claim is time-barred under 8 U.S.C. § 1252(e)(3)(A), (B). Fifth, to the extent that he requests that the Court vacate his order of expedited removal because it allegedly was not signed by a supervisor, his claim is barred as a matter of law by 8 U.S.C. § 1252(e)(2)(B). Last, to the extent that he seeks to be paroled into the country, this Court lacks jurisdiction to grant this relief because it is well-settled that "decision whether to allow an alien to enter the country [is] for the

political departments, not the judiciary." *Kiyemba v. Obama*, 555 F.3d 1011, 1028 (D.C. Cir. 2009), *reinstated by* 605 F.3d 1046 (D.C. Cir. 2010).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of Facts.

 It remains undisputed that Plaintiff is a native of Great Britain and a citizen of Canada. ECF No. 1 at 10-11; ECF No. 4-1; ECF No. 6-1 at 1; Exhibit 1.  On December 7, 2011, when Plaintiff applied for admission to the United States at the Detroit Ambassador Bridge coming from Canada, he lied to obtain admission.  Exhibit 1.  Even though Plaintiff had temporary visitor status for the limited purpose of teaching at the University of Detroit Mercy, he had owned and operated a business in the United States since 2008.  Exhibit 1; ECF No. 1 at 15. Nevertheless, on December 7, 2011, when a Customs and Border Protection ("CBP") officer asked about Plaintiff's work, Plaintiff falsely stated that his business was just getting started and that he was not doing any work.  Exhibit 1.  In fact, Plaintiff had no authorization to own and operate that business—and he lied about it because he was afraid that he would be denied admission to the United States if he told the truth about operating that business.  Exhibit 1.

On January 10, 2012, Plaintiff again applied for admission to the United States from Canada, again as a temporary visitor specifically authorized to work only at the University of Detroit Mercy.  Exhibit 1.  Plaintiff lied first to the initial immigration inspection authority, stating that he had no jobs in the U.S. other than his teaching job.  Exhibit 1.  Thereafter, Plaintiff lied to a second immigration officer who also asked Plaintiff whether Plaintiff was doing any work in the U.S. not authorized under Plaintiff's "TN status" or Canadian visa.  Exhibit 1.

When questioned by a fourth immigration officer, Plaintiff eventually admitted—under oath—that he had lied to three separate CBP officers about his unauthorized business.  Exhibit 1.

During the same interview Plaintiff stated, under oath, that he was a citizen of Canada and Great

Britain.  Exhibit 1.  Plaintiff specifically affirmed that he made no claim to be a citizen of the

United States.  Exhibit 1.  Plaintiff further stated that he made no claim to United States lawful

permanent residence (LPR) status.  Exhibit 1.  Plaintiff confirmed that, although he was adopted

by a mother who is a citizen of the United States, no application was ever filed for him to

become a citizen before he reached age 18.[1]  Exhibit 1.

Plaintiff's initials appear next to each paragraph of a five-page sworn statement taken

from that interview and his signature appears above the signatures listed for two witnesses.

Exhibit 1.  This same signed, written statement contains Plaintiff's affirmation that he had no

fear or concern about returning to his home country, and that he would not be harmed if he did so

return.  Exhibit 1.  The statement contains Plaintiff's indication that he had reviewed it for

accuracy and includes corrections on Pages 2 and 5.  Exhibit 1.

Regarding his citizenship status, Plaintiff made no claim to be a United States citizen.

Exhibit 1.  CBP officers deemed Plaintiff—who had a Canadian passport and visa—to be an

alien.  Exhibit 1.  They also determined that Plaintiff had "knowingly misrepresented to multiple

CBP Officers that [he] did not operate a business in the United States."  ECF No. 1 at 15.  CBP

Officer Joseph Morin found that Plaintiff's lies constituted a willful misrepresentation of a

material fact, and determined that Plaintiff had "made this misrepresentation in order to obtain

admission to the United States contrary to law."  ECF No. 1 at 15.  Thus, that same day, on

January 10, 2012, Officer Morin issued a Notice and Order of Expedited Removal, charging

Plaintiff with removability under 8 U.S.C. § 1182(a)(6)(C)(i)[2], as an inadmissible person who

"by fraud or willful[] misrepresent[ation]" had sought to procure a benefit under the INA.  ECF

---

[1] As discussed below (Section III.A.2.), Plaintiff could not acquire derivative citizenship otherwise.

[2] Section 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA").

No. 1 at 14.  Accordingly, Officer Morin issued an expedited order of removal against Plaintiff under 8 U.S.C. § 1225(b)(1).  *Id.*

### B. Procedural History.

On April 17, 2013, more than 14 months after he was ordered removed, Plaintiff filed a petition for review in the Sixth Circuit Court of Appeals to appeal the January 10, 2012 order of expedited removal entered against him.  *Dugdale v. Holder*, No. 13-3453 (6th Cir.).  On June 13, 2013, the Sixth Circuit Court of Appeals dismissed, holding that it lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(A) to review expedited removal orders.  *Id.* (*see* June 13, 2013 Order dismissing at ECF No. 57-1).

On May 28, 2013, before the Sixth Circuit Court of Appeals had issued that decision, Plaintiff filed a petition for a writ of habeas corpus in the U.S. District Court for the Eastern District of Michigan based on 28 U.S.C. § 2241.  *See Dugdale v. Woods*, No. 13-12330, 2013 U.S. Dist. LEXIS 90092 (E.D. Mich. June 27, 2013) (denying motions to stay removal from United States, motion for summary judgment, and motion to reopen case).  On June 7, 2013, the Eastern District of Michigan dismissed Plaintiff's petition for a writ of habeas corpus without prejudice, noting that: "(1) Petitioner is challenging the Board of Immigration Appeals' ruling to remove him from the United States before the Sixth Circuit, (2) his petition appears to be is untimely, *see* 8 U.S.C. § 1252(b)(1), and (3) it is unlikely that the Court even has jurisdiction to hear a challenge of Petitioner's removal order pursuant to 28 U.S.C. § 2241. *See* 8 U.S.C. § 1252(a)."  *Id.*, ECF No. 4 at 1.

On July 25, 2013, Plaintiff appealed that dismissal to the Sixth Circuit Court of Appeals. *Dugdale v. Customs and Border Patrol, et al.*, No. 13-1976 (6th Cir. July 25, 2013).   In the October 21, 2013 opening brief of that appeal, Plaintiff challenged the "faulty removal and

unsigned notice of removal," asserted that he had a "colourable [sic] citizenship and national status claim[]," and contended that he should have been able to adjust his status to that of a permanent resident.  *Id.*, ECF No. 15 at 4-6.  The Government moved to vacate and remand on the grounds that Plaintiff arguably was challenging his order of expedited removal based on a claim of U.S. citizenship.  *Id.*, ECF No. 21.  The Sixth Circuit disagreed with this construction of his petition and affirmed the district court's dismissal:

> [T]he sole argument that Dugdale raised in his § 2241 petition was that his removal order was not final because it was not signed by an attending supervisor. Accordingly, because Dugdale was not in custody and, in any event, did not raise a claim authorized under § 1252(e)(2), the district court lacked jurisdiction over his habeas petition.  Remand is not appropriate even in light of the government's motion because jurisdictional defects cannot be waived. . .

*Id.*, ECF No. 26-2 at 3; opinion attached as Exhibit 2.

Plaintiff next filed an application for a stay of removal, which Justice Kagan denied on June 18, 2014.  Application No. 13A1254.  On July 11, 2014, this action followed.

### C.    Summary of Plaintiff's Request for Relief.

In Plaintiff's Petition for a writ of habeas corpus under 22 U.S.C. § 2241, he asks this Court to: (1) [d]eclare me, by interpreting the law of INA 301 (A)(7) of 1952, a US citizen," for which he requests "a declarative judgement [sic] per 8 USC 1503(a)(2) that I am a United States citizen"; (2) "[d]eclare the expedited removal system unconstitutional"; and, (3) "[v]oid my removal."  ECF No. 1 at 8.  Plaintiff elaborates that he is "making a challenge to the expedited removal *system* per [8 U.S.C. §] 1252(e)(3)" ECF No. 1 at 10 (emphasis in original).  In addition, Plaintiff filed a motion for declaratory judgment and requested an oral hearing, citing Fed. R. Civ. P. 57 and Local Rule 7(f).  ECF No. 23 at 2 (mentioning "tortious interference").

Finally, in supplemental filing Plaintiff requests a "writ of mandamus" to "compel the CBP (not ICE) to immediately admit me to the United States *on parole*." ECF No. 14 at 2 (emphasis in original).

## II.  LEGAL BACKGROUND

**A.      Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).**

**1.  Subject Matter Jurisdiction and Rule 12(b)(1).**

The first and most fundamental question in every case is whether the court has subject-matter jurisdiction. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 547 (1986). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (*quoting Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).   On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003). Thus, the court is not limited to the allegations contained in the complaint.  "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citation omitted).

### 2.    Failure to State a Claim and Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must include sufficient factual context to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "facial plausibility" cannot be supported by "mere conclusory statements," *id.* at 662, and a reviewing court is required to "draw on its experience and common sense" in its determination of plausibility.  *Id.* at 664 (citation omitted).    Conclusory assertions in a complaint will not survive a Rule 12(b)(6) motion to  dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679 (citing *Twombly*, 550 U.S. at 556).  All claims must be accompanied by facts which allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

## B.    Limited Review of Expedited Removal.

### 1.    Immigration Law Background.

Under immigration law, a noncitizen seeking entry at the border is presumed to be an immigrant until he establishes to the satisfaction of the immigration officers, at the time of application for admission, that he is entitled to a non-immigrant status.  8 U.S.C. § 1184(b). Certain Canadian citizens who have established their non-immigrant status are exempt from the documentary requirements to which other arriving aliens are subject, 8 C.F.R. § 212.1(a), and are, in turn, not subject to the expedited removal statute.  8 C.F.R. § 235.3(b)(2)(i).  But these exceptions apply only to nonimmigrants.  8 C.F.R. § 212.1.  Foreign citizens, including Canadians that immigration authorities deem to be intending immigrants, are subject to

documentary requirements under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and are removable under the

expedited removal statute, 8 U.S.C. § 1225.  Though noncitizens planning to travel to the United

States temporarily for business or temporarily for pleasure may be entitled to non-immigrant

status, noncitizens coming to the United States for the purpose of performing skilled or unskilled

labor, with certain exceptions, are presumed immigrants.  8 U.S.C. § 1101(a)(15)(B) *et seq.*

### 2. Expedited Removal Orders.

Expedited removal proceedings provide a streamlined process by which U.S. officers can

remove aliens who attempt to gain entry to the U.S. but are not admissible.  *United States v.*

*Barajas-Alvarado*, 655 F.3d 1077, 1080 n.2 (9th Cir. 2011).  To streamline the removal process,

the Immigration and Nationality Act ("INA") limits administrative and judicial review of

expedited removal proceedings.  First, the INA expressly prohibits the courts of appeals to

review an expedited order of removal.  8 U.S.C. § 1252(a)(2)(A)[3] ("[N]o court shall have

jurisdiction to review – except as provided in subsection (e) of this section [–] any individual

determination or to entertain any other cause or claim arising from or relating to the

implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title."

*Id.*); *see also Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137 (9th Cir. 2008).[4]

Second, to the extent the INA permits review of an expedited order of removal through a

petition for writ of habeas corpus in federal district court, review is limited to:

(A) whether the petitioner is an alien,

---

[3] INA § 242(a)(2)(A).

[4] As for the INA's provision for judicial review of constitutional claims and questions of law, INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D), that provision creates an exception only to the judicial review bars set forth at section 242(a)(2)(B) and (C) of the INA, 8 U.S.C. § 1252(a)(2)(B)-(C), and in any other INA provision *outside* of section 1252 itself.  Thus, the exception does not cover the statutory restrictions on expedited removal review, which are contained *inside* section 1252 in locations *other* than subsections (a)(2)(B) and (C).  *See Garcia de Rincon*, 539 F.3d at 1139.

(B) whether the petitioner was ordered removed under such section [8 U.S.C. § 1225(b)(1)], and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.
. . . .

In determining whether an alien has been ordered removed under section 1225(b)(1) . . . , the [habeas] court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

8 U.S.C. § 1252(e)(2), (5).[5]

Notably, even if a federal district court were to grant habeas corpus relief, the INA requires that "the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with [removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a]."  8 U.S.C. § 1252(e)(4), INA § 242(e)(4).

**a. Statutory Limitation on Systemic Challenges to Expedited Removal Orders.**

The statute for habeas corpus challenges of expedited removals, 8 U.S.C. § 1252(e)(3), provides for limited systemic challenges under certain specified circumstances:

(3)  Challenges on validity of the system.
 (A) In general. Judicial review of determinations under section 235(b) [8 USCS § 1225(b)] and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
    (i)  whether such section, or any regulation issued to implement such section, is constitutional; or
    (ii)  whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this title or is otherwise in violation of law.

---

[5] INA § 242(e)(2), (5).

(B)  Deadlines for bringing actions. Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

(C)  Notice of appeal. A notice of appeal of an order issued by the District Court under this paragraph may be filed not later than 30 days after the date of issuance of such order.

(D)  Expeditious consideration of cases. It shall be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any case considered under this paragraph.

8 U.S.C. § 1252(e)(3).

In *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38 (D.D.C. 1998), the plaintiffs brought various challenges to the expedited removal statute.  After discussing the statute at length, the Court held that the 60-day statutory time requirement was jurisdictional and dismissed as untimely systemic challenges brought outside of the 60-day window.  *Id.* at 47.

Affirming on appeal, the U.S. Court of Appeals for the D.C. Circuit upheld the statute's judicial review section.  *American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352 (D.C. Cir. 2000).  In affirming, the court discussed the 60-day time period and judicial review provisions of the statute.  *Id.* at 1355, 1356, 1358.

**b. Statutory Limitation on Individual Challenges to Expedited Removal Orders.**

The jurisdiction of courts to hear individual challenges to expedited removals is addressed by statute:

Notwithstanding any other provision of law . . . no court shall have jurisdiction to review--

(i) except as provided in subsection (e) of this section, any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,

(ii) except as provided in subsection (e) of this section, a decision by the Attorney General to invoke the provisions of such section,

(iii) the application of such section to individual aliens, including the determination [whether an alien has a credible fear of persecution], or

> (iv) except as provided in subsection (e) of this section, procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).

Circuit courts have consistently held that 8 U.S.C. § 1252(a)(2)(A), together with 8 U.S.C. §§ 1252(e)(2) and 1252(e)(5), precludes judicial review of whether an expedited removal process was lawfully applied to a particular alien. *See Shunaula v. Holder*, 732 F.3d 143, 145-47 (2d Cir. 2013) (affirming dismissal of alien's challenge to the specific way his removal was carried out for lack of subject matter jurisdiction based on 8 U.S.C. § 1252(a)(2)(A)'s jurisdictional bar); *Khan v. Holder*, 608 F.3d 325, 329-30 (7th Cir. 2010) (holding that, under § 1252(a)(2)(A), court "lack[s] jurisdiction to inquire whether the expedited removal procedure was properly invoked"); *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1138-39 (9th Cir. 2008) (holding that § 1252(a)(2)(A) presents jurisdictional bar to collateral attack on expedited removal order); *Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 (10th Cir. 2007) (same); *Brumme v. I.N.S.*, 275 F.3d 443, 447-48 (5th Cir. 2001) (same).

Congress's decision to limit judicial review is consistent with the principle that "the power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers – a power to be exercised exclusively by the political branches of government." *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (quotation omitted); *see also U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.") (citation omitted).

### 3. Habeas Corpus of 28 U.S.C. § 2241.

The habeas corpus review in 28 U.S.C. § 2241 requires that a person be in custody at the time of filing for federal courts to have jurisdiction over a habeas petition. *See* 28 U.S.C. § 2241(c); s*ee, e.g.*, *Smith v. United States Customs and Border Prot.*, 741 F.3d 1016 (9th Cir. 2014); *see also Abdala v. INS*, 488 F.3d 1061, 1063-64 (9th Cir. 2007).

In *Smith*, following an expedited removal, the plaintiff was at liberty in Canada and was never detained by the United States. *Id.* at 1019-20. Smith nonetheless claimed in that he satisfied the custody requirement because he had been removed and/or subjected to a five-year bar to reentry. *Id.* The court held that neither status satisfied the custody required for habeas corpus. *Id.* at 1020.

### III. ARGUMENT

**A.    Plaintiff's Claim That This Court Should Declare Him a U.S. Citizen Fails as a Matter of Law Because Courts Lack the Equitable Power to Make an Individual a U.S. Citizen.**

Plaintiff appears to be asking this Court to use its equitable power to declare him a U.S. citizen. ECF No. 1 at 8, 10. His argument seems to be that it is unfair that U.S. immigration law does not automatically grant citizenship to "foreign born adoptees over the age of 18 [] who never became permanent residents of the United States through no fault of their own." ECF No. 6 at 2; *see also* ECF No. 6 at 2 (Congress considered amendments to confer "at birth" citizenship on a foreign adopted child but these bills "stalled out amid the on-going nativist hysteria over immigration reform.").

This argument fails as a matter of law because the power to confer citizenship rests in the Executive Branch, not in the courts. *Pangilinan,* 486 U.S. at 884-85 (holding that courts lack equitable power to confer citizenship); *see also Tranter v. Secretary of State*,1994 U.S. Dist. LEXIS 8824 (D.D.C. May 17, 1994) (discussing *Pangilinan* and dismissing constitutional

challenge for lack of standing where remedy sought was declaration of citizenship).  Similarly, courts lack the authority to order agencies to perform this action.  *See, e.g.*, *Wilbur v. United States, ex rel. Kadrie*, 281 U.S. 206, 218 (1930) (stating that courts do not have mandamus jurisdiction "to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either").

For this reason, Plaintiff's claim for a declaration of citizenship fails as a matter of law.

**B.     Alternatively, Plaintiff Could Be Arguing That He Is Already a U.S. Citizen and Asserting a Challenge to His Order of Expedited Removal on this Basis.**

Under 8 U.S.C. § 1252(e)(2), there are only three permissible bases for challenging an order of expedited removal: (1) alienage[6]; (2) whether Plaintiff was in fact ordered removed pursuant to the expedited removal statute[7]; or (3) whether Plaintiff has another special form of admissibility[8].

In this case, Plaintiff concedes that he was removed pursuant to an expedited removal order.  *See* ECF No. 1 at 10 ("I was removed via an expedited removal for lying to CBP agents about freelance copywriting and graphic design work I was doing for American clients while in America."); *see also* ECF No. 1 at 14-15 (copy of expedited removal order).  And he does not contend that when he was removed he was a lawful permanent resident or person entitled to refugee or asylum status.  *See* Exhibit 1.  Thus, Plaintiff has only one potential legal basis for a challenge of his order of expedited removal—a claim of U.S. citizenship.  However, as set forth below, because Plaintiff fails to assert such a claim as a matter of law, he cannot make any colorable challenge to his order of expedited removal under 8 U.S.C. § 1252(e)(2)(A).

---

[6] 8 U.S.C. § 1252(e)(2)(A).

[7] 8 U.S.C. § 1252(e)(2)(B).

[8] 8 U.S.C. § 1252(e)(2)(C).

1.  **Plaintiff's Legal Argument about His Citizenship Status Does Not Constitute a Colorable Challenge to Alienage within the Meaning of 8 U.S.C. § 1252(e)(2)(A).**

Plaintiff's claim of citizenship appears to be based primarily on his conclusory statement that "I am a United States citizen." ECF No. 1 at 17; *see also id.* at 2 ("I believe I am a U.S. citizen"). He alleges no facts to support this conclusion. Nor does he allege any facts challenging his prior admission—made under oath—that he was not a citizen or national of the United States. *See* Exhibit 1. For example, there is no allegation that he subsequently discovered new evidence calling into question his prior sworn admission. Moreover, elsewhere in his Petition, Plaintiff makes admissions that appear to recognize, if not concede, that he is not a U.S. citizen. *See* ECF No. 1 at 8 (admitting that his mother filed "two approved I-130s [immigrant petitions]" on his behalf and "I should have been able to adjust status [to a lawful permanent resident status] before removal."); ECF No. 1 at 11 ("I had been a US tax citizen for over a decade" and was "in the possession of two approved I-130 [documents]"); ECF No. 9 at 3 ("My visa was not just facially valid; it was sound as a pound because the same agency that approve it, issued it and had legally admitted me to the United States for another year after a full vetting."); *see also* ECF No. 11 at 2 (recognizing that Plaintiff could have asserted a claim of citizenship at the time the order of expedited removal was issued and "would have been sent in front of an IJ [immigration judge]" but chose not to); ECF No. 14 at 2 (requesting parole); ECF No. 23 at 5 (same). Thus, Plaintiff's unsupported allegation does not constitute "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (quotations and citation omitted). Accordingly, any claim of U.S. citizenship that Plaintiff attempts to make fails as a matter of law.

## 2.    To the Extent that Plaintiff Is Actually Arguing that He Derived U.S. Citizenship from His Mother, His Claim Fails as a Matter of Law.

Plaintiff did allege that: (1) he was born in England in 1964 and adopted that same year; (2) his adoptive mother is a United States citizen; (3) his adoptive mother lived in the United States continuously from 1924 until 1957; (4) his adoptive mother married and "resided in England" from 1964 to 1968; and (5) under British law he is considered the natural-born son of his adoptive parents.  ECF No. 1 at 10.  But even taking all of these allegations as true, as a matter of law he is not a derivative citizen.

First, former section 301(a) of the INA, 8 U.S.C. § 1401(a) (1952), the provision Plaintiff cites[9], and its current version as it appears at section 301(g) of the INA, 8 U.S.C. § 1401(g) (2012), describe persons who acquire United States citizenship "at birth."  INA § 301(g), 8 U.S.C. § 1401(g); *see also Alexander v. INS*, 74 F.3d 367, 370 (1st Cir. 1996) (describing the more restrictive, former section 301 of the INA, 8 U.S.C. § 1401, and the eventual repeal of those restrictive elements in 1978 and subsequent amendments alleviating the situation of persons who lost citizenship based on the prior law); U.S. Dep't of State Foreign Affairs Manual, vol. 7, Consular Affairs, § 1133.2-2 (providing background history of statute).[10]  Indeed, as the Board stated, "[t]here is no indication that this section applies to an adopted child" because the provision requires that the child be "*born* of a United States citizen."  *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153, 155 (BIA 2001) (emphasis added).  Thus, because Plaintiff was not a child who was "born of a United States citizen"— rather, he was a child who was adopted by a United States citizen — section 301 of the INA, 8 U.S.C. § 1401, does not apply.  *Accord* U.S.

---

[9] ECF No. 1 at 8.

[10] Available at http://www.state.gov/m/a/dir/regs/fam/07fam/c22712.htm.

Dep't of State Foreign Affairs Manual, vol. 7, Consular Affairs, § 1131.3 ("Adoption of an alien

minor by an American does not confer U.S. citizenship on the child.")[11]; *id.* § 1131.4-1 ("Absent

a blood relationship between the child and the parent on whose citizenship the child's own claim

is based, U.S. citizenship is not acquired.").

Second, sections 320 and 322 of the INA, 8 U.S.C. §§ 1431, 1433 (1982), specifically

address derivative citizenship for children born outside of the United States, including "[a]dopted

children." *See* INA §§ 320(b), 322(c), 8 U.S.C. §§ 1431(b), 1433(c) (1982); *see also Romero-

Mendoza v. Holder*, 665 F.3d 1105, 1107 (9th Cir. 2011) ("[D]erivative citizenship is determined

under the law in effect at time the critical events giving rise to the eligibility occurred.") (citation

omitted).  Because Plaintiff states that he did not permanently reside in the United States as a

child, his United States citizen mother was required to file a petition for naturalization on his

behalf prior to his eighteenth birthday.[12]  *See* INA § 322(a), 8 U.S.C. § 1433(a) (1982) (section

applicable to "[c]hildren born and residing outside the United States").  Plaintiff has neither

claimed nor suggested that such a petition was filed on his behalf, and there is no evidence to the

contrary.[13]  Plaintiff has not, therefore, derived United States citizenship through his mother

under section 322 of the INA, 8 U.S.C. § 1433(a) (1982).  S*ee generally Matter of Tijerina-

Villarreal*, 13 I&N Dec. 327, 330 (BIA 1969) ("The burden to establish alienage in deportation

proceedings is upon the Government.  When there is a claim of citizenship, however, one born

abroad is presumed to be an alien and must go forward with the evidence to establish his claim to

United States citizenship.") (citation omitted).

---

[12] *See* ECF No. 1 at 10 ("We resided in England from 1964 until 1968 when we moved to Sarnia, Ontario, Canada."); *see also* ECF No. 6 at 2 ("We never lived in the United States before my 21st birthday.").

[13] In fact, Plaintiff implicitly concedes that this was not done by raising a challenge to the law on this, or he would lack standing.  *See* ECF No. 6 at 2.

Third, in any event, the INA specifically authorizes the Secretary of State to make determinations of nationality where, as here, the claimant is outside of the United States. *See* INA § 104(a), 8 U.S.C. § 1104 ("The Secretary of State shall be charged with the administration and enforcement of the provisions of this chapter and all other immigration and nationality laws relating to . . . the determination of nationality of a person not in the United States."). Thus, the proper forum for reviewing Plaintiff's claim of United States citizenship, including any additional arguments he may raise to exhaust his avenues for proving that he acquired or derived United States citizenship by operation of law, is at a United States Embassy or consulate.

In sum, Plaintiff did not derive U.S. citizenship from his mother as a matter of law. Thus, he cannot assert a colorable claim of derivative citizenship in order to challenge his order of expedited removal.

## B. Plaintiff Is Not In Custody and Therefore Cannot State a Claim for a Writ of Habeas Corpus under 28 U.S.C. § 2241.

Plaintiff argues that he is in the "permanent" custody of the Attorney General and CBP. ECF No. 1 at 13; *see also* ECF No. 19 at 2. He also contends that he owns property in the United States, and has family in the United States. ECF No. 1 at 8, 11, 13. Thus, he alleges that he is in the constructive custody of the United States based on his exclusion. *Id.* at 13. Plaintiff also appears to try to satisfy the custody requirement by filing while admitted on parole in July of 2014. *See id.* at 1, 16-17.

On the contrary, Plaintiff cannot bring a valid claim under 28 U.S.C. § 2241 because he was at liberty for over 30 months after his expedited removal before filing the instant petition. Just as in *Smith*, Plaintiff fails to establish "custody" within the meaning of 28 U.S.C. § 2241 because Plaintiff has lived free, without confinement or official restraint, in Canada since his expedited removal over two years ago. *See Smith*, 741 F.3d at 1019 ("When Smith filed his

petition more than a year after his removal, he without question was not 'in custody.'"). Plaintiff's alleged "collateral consequences"—being excluded, not held captive—do not constitute custody by any definition.  *See id.* at 1019-20 (rejecting similar collateral consequences argument).

The so-called "collateral consequences" from the expedited removal that Plaintiff challenges amount to those set forth in 8 U.S.C. § 1252(a) and (e)—and, therefore, do not constitute "custody" such that they would require special treatment beyond circumstances the statute contemplates.  *See id.*  Despite Plaintiff's attempts to portray his situation as unique, Congress has clearly addressed habeas corpus challenges to expedited removals and limited jurisdiction to those claims raised properly under 8 U.S.C. § 1252(e)(3).  The Court should reject Plaintiff's invitation to re-write the statute to provide for a novel theory of constructive custody based on his alleged equities. *See also Rodriguez v. United States Customs & Border Prot.*, 2014 U.S. Dist. LEXIS 131872 (W.D. La. Sept. 18, 2014) ("The expedited removal statutes are express and unambiguous. The clarity of the language forecloses acrobatic attempts at interpretation. However, Diaz Rodriguez asks the court to do just that.").

To the extent that Plaintiff might be attempting to use the very parole he requested as a way of attempting to satisfy the custody requirement, this confuses custody with temporary detention[14]—and, in any event, is moot because Plaintiff is already back in Canada.  *See* ECF No. 1 at 13 (mentioning paroles); *see also Samirah v. O'Connell*, 335 F.3d 545 (7th Cir. 2003)(discussing habeas challenge in parole context and rejecting similar argument: "As far as the government is concerned, Samirah may wander the earth, so long as his wanderings do not lead him to the United States. Samirah is, in some sense, restrained insofar as he cannot enter the

---

[14] A person who is granted "parole" into the United States is deemed to be a person seeking admission.  *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958).

United States. But that restraint, such as it is, only puts him on par with the billions of other non-U.S. citizens around the globe who may not come to the United States without the proper documentation." *Id.* at 549-50.); *see also Abdala v. INS*, 488 F.3d 1061, 1063-64 (9th Cir. 2007).

Hence, Plaintiff's claim under § 2241 fails to meet even the threshold custody requirement and should be dismissed under Rules 12(b)(1) and 12(b)(6).

## C. Plaintiff's Attempt to Raise a Systemic Challenge is Untimely Under 8 U.S.C. § 1252(e)(3).

### 1. The 60-Day Time Limitation is Jurisdictional.

Congress created a process permitting plaintiffs directly affected by expedited removal orders to challenge the expedited removal system within 60 days of its enactment. 8 U.S.C. § 1252(e)(3)(B) ("Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or written procedure described in clause (i) or (ii) of subparagraph (A) is first implemented."). Another court in this district previously held that the 60-day time ended on May 31, 1997. *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 47 (D.D.C. 1998) ("The Court finds that the 60-day requirement is jurisdictional rather than a traditional limitations period."), *aff'd by American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1358 (D.C. Cir. 2000). Plaintiff filed this challenge on July 11, 2014, more than 17 years late. ECF Doc. No. 1.

Plaintiff appears to base his lone argument for an exception to the jurisdictional time requirement upon *Shunaula v. Holder*, 732 F.3d 143 (2d Cir. 2013). *See* ECF No. 1 at 6, 11. But the *Shunaula* Court merely recognized that systemic challenges cannot be filed outside of District Court for the District of Columbia. *Id.* at 147. The decision is silent regarding the 60-day time limitation of 8 U.S.C. § 1252(e)(3)(B). Thus, it is irrelevant to the present action. *See*

*id.* at 146-47.[15]   Consequently, Plaintiff's purported systemic challenge is time-barred and should be dismissed under Rule 12(b)(1).

### 2.  There is No Suspension Clause Violation.

Even if Plaintiff's systemic challenge were not time-barred as a matter of law, it is without merit.   Plaintiff appears to challenge 8 U.S.C. § 1252(e) by relying, in part, on *INS v. St. Cyr*, 533 U.S. 289 (2001), in claiming the statute "violates the Suspension Clause" because Plaintiff is allegedly without any legal forum in which to challenge his 2012 expedited removal order.  *See* ECF No. 1 at 3, 11-13; ECF No. 11 at 2.  Plaintiff's assertions are wrong.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."  U.S. Const. art. I, § 9, cl. 2.  Plaintiff, however, "has no constitutional due process right . . . because he is a non-resident alien [who sought] entry."  *Garcia de Rincon*, 539 F.3d at 1141–42; *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

In *Garcia de Rincon*, the Ninth Circuit suggested that narrow habeas review of expedited removal orders does not raise the constitutional problems alluded to in *INS v. St. Cyr*, 533 U.S. 289 (2001), provided that the petitioner has not been lawfully admitted.  *Id.*, 539 F.3d at 1141 (citing *Li*, 259 F.3d at 1135).  Thus, the  *Garcia de Rincon* Court —rejecting petitioner's claim that 8 U.S.C. § 1252(e) violated the Suspension Clause—noted that "while *Li* [was] not a

---

[15] *Shunaula* involved a petition for review of the Board of Immigration Appeals' order affirming an immigration judge's order of removal.  *Id.* at 144.  Immigration authorities at an airport issued an expedited removal order after finding in Shunaula's wallet a counterfeit social security card and green card.  *Id.* at 144-45.

Suspension Clause case *per se*, it [did] discredit the generalized due process arguments raised by de Rincon, which is the right she seeks to vindicate via habeas."  539 F.3d at 1141.

Plaintiff disagrees with the Ninth Circuit Court of Appeals' holding in *Garcia de Rincon*. His position is based primarily on a misreading of the *St. Cyr* decision, an opinion that involved an interpretation of a previous immigration provision that was altered by the REAL ID Act.[16] *INS v. St. Cyr*, 533 U.S. 289 (2001).  *St. Cyr* involved an interpretation of a previous immigration statute that was subsequently altered by the REAL ID Act.  *See, e.g.*, *Iasu v. Smith*, 511 F.3d 881, 886 (9th Cir. 2007) ("The REAL ID Act changed the statutory regime. Effective May 11, 2005, the REAL ID Act responded to *St. Cyr* by eliminating all district court habeas jurisdiction over orders of removal.").

Further, unlike the facts in this case, *St. Cyr* involved an alien who was a lawful permanent resident physically present in the United States.  Following his criminal conviction, this alien was order removed and subject to physical detention.  533 U.S. at 292-93, 304-05.  At issue in *St. Cyr* was whether district courts retained habeas jurisdiction, under the law at the time, to entertain challenges to orders of removal issued by immigration judges.  *Id*. at 298.

 The court first reiterated "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction."  *Id*. at 298.  Examining the then-codified jurisdiction provisions, the court noted the lack of a plain statement—let alone any mention of habeas—in each of the provisions the Government cited.  *Id*. at 310-14.  The focus of those provisions, as the court explained, was "judicial review" or "jurisdiction to review," as opposed to "habeas corpus."  *Id*. at 310-11.  Because "judicial review" or "jurisdiction to review" and

---

[16] Plaintiff's citation to *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119 (D.D.C. 2010), is misplaced.  In that case, the court held that petitioners allegedly detained abroad, subject to travel restrictions, stigmatized, prohibited from traveling to the United States, and barred from seeking civil damages faced consequences that were not redressable by a federal court.  *Id*. at 130-31.  Here, Plaintiff has alleged no similar facts.

"habeas corpus" are terms with historically distinct meanings, the Government's cited provisions could not satisfy the plain statement rule. *Id*. at 310-14. Consequently, the provisions did not deprive the district court of jurisdiction under the general habeas statute, 28 U.S.C. § 2241.

But this holding has no bearing on any issue in the present case and it does not support Plaintiff's argument that *Garcia de Rincon* was wrongly decided. Thus, even if Plaintiff's systemic challenge were not time-barred under 8 U.S.C. § 1252(e)(3), his claim would still fail as a matter of law.

**D. Section 1252(e)(2)(B) Bars Plaintiff's Claim that His Order of Expedited Removal Is Invalid Because Allegedly It Was Not Signed By a Supervisor.**

Plaintiff asserts that his own expedited removal is somehow improper because it lacks a supervisor's signature. ECF No. 1 at 13. This claim is plainly barred by 8 U.S.C. § 1252(e)(2)(B), which sets forth three, and only three, bases for challenging an order of expedited removal. *See Smith*, 741 F.2d at 1020-21.

Even assuming, *arguendo*, that the challenge were not jurisdictionally foreclosed, Plaintiff cites no authority for the proposition that such a signature is required. Indeed, the relevant regulation, 8 C.F.R. § 235.3, requires only that a supervisor review and approve of the expedited removal.[17] Thus, this argument is wholly without merit.

---

[17] 8 C.F.R. § 235.3(b)(7) states that an expedited removal order "must be reviewed and approved by the appropriate supervisor before the order is considered final. Such supervisory review shall not be delegated below the level of the second line supervisor, or a person acting in that capacity. The supervisory review shall include a review of the sworn statement and any answers and statements made by the alien regarding a fear of removal or return. The supervisory review and approval of an expedited removal order for an alien described in section 235(b)(1)(A)(iii) of the Act must include a review of any claim of lawful admission or parole and any evidence or information presented to support such a claim, prior to approval of the order. In such cases, the supervisor may request additional information from any source and may require further interview of the alien.

**E. This Court Lacks Jurisdiction to Grant Plaintiff's Request for a Parole.**

Plaintiff asks in various supplemental filings for the Court to grant him parole.  *See, e.g.*, ECF No. 14 at 2; ECF No. 23 at 5.  To the extent that this Court decides to entertain this claim, which does not appear in his Petition, this claim should be dismissed for lack of subject matter jurisdiction.  *See* 8 U.S.C. § 1252(e)(1), INA § 242(e)(1) ("[N]o court may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) . . . except as specifically authorized in a subsequent paragraph of this subsection.").[18]  "[T]he [Supreme] Court has, without exception, sustained the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms."  *Kiyemba v. Obama*, 555 F.3d 1022, 1028 (D.C. Cir. 2009) *reinstated by* 605 F.3d 1046 (D.C. Cir. 2010); *see also Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("[It] is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); *Am. Immigration Lawyers Ass'n*, 18 F. Supp. 2d at 58-60 (rejecting due process challenges to expedited removal under section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1), and implementing regulations).

As relevant here, Congress expressly authorized the Executive Branch to determine whether an applicant for admission may be paroled into the United States.[19] *See* INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); *see also Kiyemba*, 555 F.3d at 1026-32 (holding that there was no law authorizing the district court to "set aside the decision of the Executive Branch and to order [the] aliens brought to the United States and released in Washington, D.C.");

---

[19] The Board of Immigration Appeals has long held that it does not have parole authority.  *See Matter of Valenzuela*, 26 I&N Dec. 53, 63 (BIA 2012).

*Knauff*, 338 U.S. at 542 (Congress and the Executive Branch share their power to exclude or admit a person into the United States).[20]   Accordingly, this Court should deny Plaintiff's request because the federal courts lack inherent or delegated authority to grant his request for parole into the United States.  *See Kiyemba*, 555 F.3d at 1028 ("The Judiciary only possesses the power Congress gives it — to review Executive action taken within [the statutory] framework.").

## IV.  CONCLUSION

For the reasons mentioned, Plaintiff's Petition should be dismissed with prejudice. Plaintiff fails to raise any colorable claim of citizenship.  He also cannot assert a valid habeas claim under 28 U.S.C. § 2241 because he is not in custody.  To the extent that he is asserting a systemic challenge to the expedited removal system, his claim is time-barred under 8 U.S.C. § 1252(e)(3)(A), (B).  To the extent that he claims that his order of expedited removal should be vacated because it allegedly was not signed by a supervisor, his claim is barred as a matter of law by 8 U.S.C. § 1252(e)(2)(B).  Last, to the extent that he actually is seeking to be paroled into the country, this Court lacks jurisdiction to grant this relief.

Therefore, this Court should dismiss the Petition with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[20] On March 1, 2003, the parole authority was transferred from the Attorney General and the former Immigration and Naturalization Service to the Secretary of Homeland Security.  *See* INA § 103(a), 8 U.S.C. § 1103(a).

Dated:  September 29, 2014                    Respectfully submitted,

JOYCE R. BRANDA                               */s/ Dillon A. Fishman*
Acting Assistant Attorney General            DILLON A. FISHMAN
                                             Trial Attorney
                                             United States Department of Justice
WILLIAM C. PEACHEY                            Office of Immigration Litigation
Director                                     District Court Section
                                             P.O. Box 868, Ben Franklin Station
AARON S. GOLDSMITH                            Washington, D.C. 20044
Senior Litigation Counsel                     AZ Bar No. 024259
                                             Telephone: (202) 532-4114
                                             Facsimile: (202) 305-7000
                                             E-mail: Dillon.A.Fishman@usdoj.gov

                                             Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2014, I electronically filed the

foregoing DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using CM/ECF,

which will automatically serve the *pro se* Plaintiff (registered in CM/ECF) with a copy of said

document:

Timothy Dugdale
1042 Pelissier
Windsor
Canada
Tel: 313-320-3920
Email: dugdale@atomicquill.com

/s/ Dillon A. Fishman
Dillon A. Fishman
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
District Court Section

Attorney for Defendants