UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY DUGDALE,<br><br>           Petitioner,<br><br>     v.<br><br>U.S. CUSTOMS AND BORDER<br>PROTECTION et al.,<br><br>           Respondents. | Case No. 1:14-cv-01175 (CRC) |

**MEMORANDUM OPINION**

This is a challenge to an order of expedited removal issued against a Canadian citizen who attempted to enter the United States from Canada. Timothy Dugdale was ordered removed after Customs and Border Protection ("CBP") officers determined he was conducting business activities in the United States that were prohibited by his immigration status, and that he had lied about the business to gain entry into the country. Dugdale has petitioned the Court in habeas, contending that he is in fact a U.S. citizen, or at least entitled to become a permanent lawful resident, because he was adopted as an infant by an American mother living in England. He also argues that the removal order was invalid because it was not signed by a CBP supervisor and that the expedited removal statute is unconstitutional. After review of all of the briefing, including some 37 separate pleadings filed by Mr. Dugdale, the Court concludes that it has subject matter jurisdiction over his citizenship and permanent residency claims under the limited judicial review provisions of the REAL ID Act of 2005, 8 U.S.C. § 1252(e)(2). It will nonetheless dismiss those claims because Dugdale has not alleged sufficient facts to state a claim for relief. The Court also will assert jurisdiction over Dugdale's claim that his removal order was procedurally defective and will order supplemental briefing to resolve lingering questions of fact and law regarding the

potential defect in the order. Finally, the Court finds that it lacks subject matter jurisdiction over Dugdale's constitutional challenge to the expedited removal system because he did not file it within 60 days after the contested provisions were implemented, as required by 8 U.S.C. § 1252(e)(3). The Court, accordingly, will grant the government's motion to dismiss in part.

**I.     Background**

The following facts are drawn from Mr. Dugdale's habeas petition and related filings. The Court accepts them as true for the purpose of resolving the petition. Dugdale was born in England in 1964 and adopted as an infant by an American mother and English father. The family moved to Ontario, Canada four years later. Dugdale appears to have spent most of his professional life living and working on both sides of the U.S. border. After studying in Detroit in the 1990s, Dugdale settled in the area and lectured at Detroit Mercy University for over a decade on a "TN" visa—a nonimmigrant classification created under the North American Free Trade Agreement to enable Mexican and Canadian citizens to work in the United States in certain professional occupations. He has a U.S.-citizen son in Michigan over whom he has joint legal custody with his ex-wife, who is also a U.S. citizen, and a wife and another U.S.-citizen son who live in Virginia. Dugdale's mother lives in London, Ontario, and he regularly travelled back and forth to Canada for family and work obligations. He also operated a graphic design business out of his home, which apparently was not authorized under his TN status.

On January 10, 2012, Dugdale tried to return to his home outside Detroit after visiting his mother in Ontario. When questioned by CBP officers at the Detroit Ambassador Bridge, he initially denied conducting any business in the U.S. other than his teaching job. On further questioning, however, Dugdale conceded in a sworn statement that he operated the graphic design business and that he had not disclosed it because he feared he would be denied admission.

He also acknowledged having denied the existence of the business when questioned during a prior border crossing.  Based on his statement, CBP determined that Dugdale had willfully misrepresented a material fact in order to gain admission into the United States and, accordingly, issued an order under the expedited removal statute, 8 U.S.C. § 1225(b)(1), barring him from entering the United States for five years.  Habeas Petition at 17 (Determination of Inadmissibility).

Dugdale challenged his expedited removal order in two ways.  First, he filed a "petition for review" with the Sixth Circuit.  See Dugdale v. Holder, No. 13-3453 (6th Cir. June 13, 2013).  The Sixth Circuit held that it did not have jurisdiction to review the order of expedited removal under the narrow judicial review provisions of 8 U.S.C. § 1252(a)(2)(A).  Id.  Dugdale then filed a petition for a writ of habeas corpus in the U.S. District Court for the Eastern District of Michigan.  The district court *sua sponte* dismissed that petition without prejudice.  Dugdale v. Woods, No. 13-12300 (E.D. Mich. June 27, 2013).  Dugdale appealed the dismissal to the Sixth Circuit and the government sought remand, arguing that Dugdale had raised a colorable argument that he was a U.S. citizen, and the district court therefore had jurisdiction over that narrow question pursuant to Section 1252(e)(2)(A).  Brief for Government, Dugdale v. Customs & Border Patrol, No. 13-1976 (6th Cir. Jan. 30, 2014).  The Sixth Circuit disagreed, finding that the district court lacked jurisdiction because Dugdale had not squarely raised a citizenship claim in his habeas petition.  Dugdale v. Customs & Border Patrol, No. 13-1976 (6th Cir. Apr. 7, 2014).

One avenue remained:  Dugdale requested discretionary permission to enter the country, see 8 U.S.C. § 1182(d)(3)(A), which CBP granted.  On July 11, 2014, while on this "advance parole," Dugdale personally filed his habeas petition in this court.  He later voluntarily left the

United States within the time limits prescribed by his advance parole but was again granted permission to return to care for his infant son while his wife was being treated for cancer. Pet.'s Reply to Mot. for Emergency Stay of Removal. This second discretionary parole expired on January 17, 2015. Resp'ts' Opp'n to Emergency Stay of Removal at 1.

## II.     Analysis

Dugdale's habeas petition, supplemented by a series of colorful *pro se* filings, presents four principal grounds for relief.[1] First, he claims his removal was improper because he is a U.S. citizen (or at least is entitled to citizenship) by virtue of his adoption in England by an American mother. Second, he argues in the alternative that the immigration officials at the border should have permitted him to adjust status to that of a lawful permanent resident, rather than removing him, because he was the beneficiary of two approved "I-130" petitions made by his American mother. Third, he claims the removal order is invalid because it lacks the signature of a CBP supervisor. And finally, he asserts that the expedited removal system as a whole is unconstitutional.

Dugdale filed his habeas petition under the general habeas corpus statute, 28 U.S.C. § 2241. Habeas Petition at 1. Congress, however, created exclusive procedures for challenging orders of expedited removal. See 8 U.S.C. § 1252(e)(1) ("Without regard to the nature of the

---

[1] Dugdale has also filed various other motions: A motion for summary judgment on his citizenship claim, (ECF No. 6); a motion for a temporary restraining order and preliminary injunction, which the Court denied (ECF No. 7); a motion for a writ of mandamus to compel the government to admit him into the country (ECF No. 14); a motion for a declaratory judgment and oral hearing (ECF No. 23); a motion for a stay of removal, which the Court denied (ECF No. 35); a motion for reconsideration of the stay denial (ECF No. 44); and a variety of other notices of supplemental authority, responses, and surreplies. The D.C. Circuit summarily denied Dugdale's appeal of this Court's denial of his motion for a stay. In re Dugdale, No. 14-5329 (D.C. Cir. Jan. 14, 2015). The Court has reviewed and considered all these filings and has construed Dudgdale's arguments liberally in consideration of his *pro se* status.

action or claim . . . , no court may (A) enter declaratory, injunctive, or other equitable relief in any action pertaining to [an order of expedited removal] except as specifically authorized in a subsequent paragraph of this subsection."). The vehicle for seeking review of expedited removal orders is a petition for habeas corpus in federal district court. Id. § 1252(e)(2) ("Judicial review of any determination made under [the expedited removal provision] is available in habeas corpus proceedings."). This is not full-blown habeas review, however. The district court's review of an expedited removal order is limited to three narrow questions:

> (A) whether the petitioner is an alien,
>
> (B) whether the petitioner was ordered removed under such section, and
>
> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title….

Id. The statute also authorizes challenges to the constitutionality of the expedited removal statute and its associated regulations. Id. § 1252(e)(3). But any such action must be filed within 60 days after the challenged provision or regulation was first implemented. Id. § 1252(e)(3)(B).

The central task before the Court, then, is to determine whether review of any of Dugdale's claims pertaining to his expedited removal order is permitted by the narrow confines of Section 1252(e). If review is not permitted, the Court lacks jurisdiction over the claim. If it is, the Court then must decide whether Dugdale has stated a claim for relief. Since the government has brought a motion to dismiss for lack of subject matter jurisdiction, Dugdale has the burden of demonstrating by a preponderance of the evidence why this Court has jurisdiction. Boland v. Fortis Const. Co., 796 F. Supp. 2d 80, 86 (D.D.C. 2011). The Court will address each claim in turn.

      A.    <u>Citizenship</u>

The Court has subject matter jurisdiction over Dugdale's claim to U.S. citizenship because that question relates to "whether [he] is an alien." 8 U.S.C. § 1252(e)(2)(A). The substance of his claim—whether he derived citizenship from his U.S. citizen mother—is determined under the law in effect at the time "the critical events giving rise to eligibility occurred." <u>Minasyan v. Gonzales</u>, 401 F.3d 1069, 1075 (9th Cir. 2005). When Dugdale was born, the law provided that a person "born outside" the United States "of parents one of whom is an alien, and the other is a citizen of the United States" acquired citizenship at birth. 8 U.S.C. § 1401(a)(7) (1964) (also noting certain residency requirements of the U.S. citizen parent not at issue here). Congress later allowed an individual who had subsequently lost birth-right citizenship due to failure to move to the United States before the age of twenty-three, <u>id.</u> § 1401(b) (1964), to become a citizen by taking an oath of allegiance, <u>id.</u> § 1435(d). Dugdale argues that although he was not born to a U.S.-citizen parent, he is entitled to birth-right citizenship because British law treats a child adopted by a married couple as if "he had been born as a child of the marriage." Habeas Petition at 15 (quoting Adoption Act of the United Kingdom, Part IV, Section 39). Dugdale thus contends he should be treated as a child "born of" his American mother. <u>See</u> <u>Matter of Oshane Shaneil Cross</u>, 26 I.&N. Dec. 485, 492 (BIA 2015) (discussing the practice of deferring to foreign law to determine whether a child has been legitimated and is therefore entitled to certain immigration benefits).

Fairly or not, however, U.S. law at the time of Dugdale's birth did distinguish between adopted children and natural-born children. <u>See</u> 8 U.S.C. §§ 1431(b), 1432(b) (1964 & 1982) (noting different automatic citizenship provisions for adopted children upon naturalization of an alien parent); <u>id.</u> § 1433(b) (1982) (outlining the mechanisms by which an adopted child may

6

naturalize). In order for an adopted child born abroad to naturalize, a petition of naturalization must have been filed on the child's behalf before his or her 18th birthday and the adopted child must have lived in the United States with his or her citizen parent pursuant to a "lawful admission for permanent residence." Id. § 1433(b) (1982). Because Dugdale acknowledges that he never resided in the U.S. before age 18 and does not allege that a naturalization petition was filed on his behalf before he turned 18, he has not demonstrated his entitlement to derivative U.S. citizenship as an adopted child. Dugdale's citizenship challenge must therefore be dismissed for failing to state a claim.

      B.      Permanent Residency

As an alternative to his citizenship claim, Dugdale asserts that he was the beneficiary of two approved "I-130" petitions when he was turned away at the border. Having an approved I-130 petition enables certain relatives of a U.S. citizen to request to be admitted as a lawful permanent resident (also known as "adjusting status"). Dugdale argues he should have been permitted to adjust status to that of a lawful permanent resident "on the spot."[2] Habeas Petition at 12. The Court has jurisdiction to consider this claim under 8 U.S.C. § 1252(e)(2)(C), which permits review of whether the petitioner was "an alien lawfully admitted for permanent residence."

Although Dugdale now asserts that he had at least one approved I-130 petition, he told the CBP agents at the border that he was still waiting for the petition to be approved. See Resp'ts' Mot. to Dismiss Ex. 1, at 2. But even if Dugdale had an approved petition, that still

---

[2] Dugdale concedes that his actions before removal, such as working under TN status, were inconsistent with a belief that he was a citizen. He insists he only came to understand the extent of his citizenship claim after his expedited removal. Pet's Supp. Opp'n to Mot. to Dismiss; Pet's Surreply.

7

would not have entitled him to lawful permanent resident status.  There is no "on the spot" avenue to become a permanent resident, with an approved I-130 or otherwise.  In order to become a lawful permanent resident after receiving an approved petition, an alien must submit an application to adjust status.  8 U.S.C. § 1255(a).  Dugdale does not allege he ever made that request.  Because Dugdale does not allege that he had been admitted as a lawful permanent resident, he has not set forth sufficient facts to establish that he is entitled to the relief he seeks.  The Court will therefore dismiss Dugdale's permanent residency claim.

### C. Invalidity of Removal Order

Dugdale next claims that his expedited removal order is invalid because it was not signed by a CBP supervisor.  Once again, the Court first must determine whether judicial review of that claim is permitted by Section 1252(e)(2).  One of the three questions a court may consider under that section is "whether the petitioner was ordered removed."  8 U.S.C. § 1252(e)(2)(B).  In doing so, the statute instructs that "the court's inquiry shall be limited to whether [an expedited removal] order in fact was issued and whether it relates to the petitioner."  Id. § 1252(e)(5).  The order here clearly "relates to the petitioner."  But can it be said that Dugdale's claim relates to whether the order "in fact was issued"?  Case law on this question is scarce.  While no court appears to have examined the precise issue presented here, one court reviewed a petition under Section 1252(e)(2)(B) where the petitioner claimed to be exempt from the documentation requirements the government alleged he violated.  See Smith v. Customs & Border Prot., 741 F.3d 1016, 1021 (9th Cir. 2014).  Another exercised jurisdiction over a claim by aliens that they were not "arriving" in the United States when they were detained—as required under the removal statute, 8 U.S.C. § 1225(b)—but rather were arrested after living here for some time.  See Am-Arab Anti-Discrimination Comm. v. Ashcroft, 272 F. Supp. 2d 650, 665–68 (E.D. Mich.

2003). Without abundant guidance, the Court concludes that a determination of whether a removal order "in fact was issued" fairly encompasses a claim that the order was not lawfully issued due to some procedural defect. See id. at 663 (exercising jurisdiction under Section 1252(e)(2)(B) "to determine whether the expedited removal statute was *lawfully applied* to petitioners in the first place") (emphasis in original). Dugdale's contention that his order was not lawfully issued because it lacked a supervisor's signature falls within that category of claims. The Court therefore will examine the merits of this argument.

  The expedited removal statute provides that an alien "arriving in the United States" who is determined to be inadmissible shall be ordered removed without a hearing, unless he or she asserts a claim of asylum or fear of prosecution. 8 U.S.C. § 1225(b)(1)(A)(i). The determination of inadmissibility and subsequent order of removal may be made by "an immigration officer." Id. The statute does not require supervisory approval of that order. The regulations implementing the statute, however, provide that any expedited removal order "must be reviewed and approved by the appropriate supervisor before the order is considered final." 8 C.F.R. § 235.3(b)(7). The regulations do not explicitly require that a supervisor *sign* the order in order to approve it, although there is a space on the order itself for such a signature, as well as a box to indicate if the supervisor's approval was obtained by phone if no supervisor was on duty. The regulations also provide that the immigration officer must serve the alien with a copy of the order "[a]*fter* obtaining supervisory concurrence." Id. § 235.3(b)(2)(i) (emphasis added).

  The order which CBP served on Dugdale—a copy of which he provided to the Court—does not bear a supervisor's signature or a checked box indicating remote approval. Habeas Petition at 17. Dugdale therefore has raised a legitimate question as to whether a CBP supervisor in fact "reviewed and approved" the order before it was served, as required by CBP's

regulations, and as to when, if ever, the order became final. The government attempts to deflect this potential deficiency by directing the Court to another copy of the order which *does* bear a supervisor's signature. Resp'ts' Opp'n to Emergency Stay of Removal, Ex. 1. The government represents that this signed version of the order was "retrieved from [Dugdale's] Alien File," Resp'ts' Opp'n to Pet. Emergency Stay of Removal at 6, yet it does not say, through affidavits or otherwise, when the order was retrieved or when the supervisor signed it, and the signature itself is not dated. On the current record, therefore, the order could have been signed at any time between Dugdale's removal and the submission of the exhibit in these proceedings. As a result, it remains unclear whether CBP complied with its own regulations in issuing Dugdale's removal order. To resolve this factual issue—and determine what, if any, effect a lack of supervisor approval might have on the validity of the order and the relief available to Dugdale—the Court will reserve judgment on this aspect of the petition and invite the parties to submit supplemental briefing solely on this issue. The Court asks the parties to include responses to the following questions in their submissions:

(1) Was the order "reviewed and approved" by a CBP supervisor? If so, when?

(2) When was the order retrieved from Dugdale's immigration file?

(3) When was the order signed by a CBP supervisor?

(4) What legal effect does the order have if it was signed by the supervisor after Dugdale was served with the order?

(5) What legal effect does the order have if it became final only after Dugdale was removed?

(6) Was Dugdale still an "arriving" alien when the removal order became final? See 8 U.S.C. § 1225(b)(1)(A)(i); Am-Arab Anti-Discrimination Comm., 272 F. Supp. 2d at 665–66.

(7) If the removal order is deemed invalid due to a lack of supervisory approval, what if any remedy is Dugdale entitled to receive?

It may well be that nothing turns on the missing signature in this case. But given how few means aliens have to challenge expedited removal orders, the Court believes it important that CBP follow the letter of the law in issuing them, even in cases where the grounds for removal appear clear. Supervisory approval is one of the few checks on erroneous or arbitrary expedited removals. It should be taken seriously. The government shall file its supplemental pleading within fourteen days of this Opinion. Dugdale shall file any response within seven days thereafter.

### D. Constitutionality of the Expedited Removal System

Finally, Dugdale challenges the constitutionality of the expedited removal system as a whole. He argues that the system does not allow a recipient of a removal order sufficient opportunity to refute alienage, or extend heightened due process to aliens who have accrued "meaningful connections" with the United States. Habeas Petition at 11–12; see United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990) (discussing constitutional protections for aliens who have developed substantial voluntary connections with the United States). He also alleges that "[t]here is no safety valve for challenging a removal that doesn't meet the procedural standards." Habeas Petition at 11–12.

As noted above, however, Congress provided that any constitutional challenge to the expedited removal system must be filed within 60 days after the contested statutory provision, regulation, or procedure is first implemented. 8 U.S.C. § 1252(e)(3)(B). This "60–day requirement is jurisdictional rather than a traditional limitations period." Am. Immigration Lawyers Ass'n v. Reno, 18 F. Supp. 2d. 38, 47 (D.D.C. 1998), aff'd, 199 F.3d 1352, 1356 (D.C. Cir. 2000). As the REAL ID Act was passed in May 2005, the 60-day limit on review has long

since expired.  Garcia de Rincon v. Dep't of Homeland Sec., 539 F.3d 1133, 1140 (9th Cir. 2008).

Dugdale contends that his constitutional challenge should be allowed to proceed notwithstanding Section 1252(e)(3)'s 60-day bar because the statute violates the Suspension Clause of Article I of the Constitution.  Habeas Petition at 11–12.  Relying principally on Boumediene v. Bush, 553 U.S. 723 (2008), Dugdale argues that Section 1252(e) provides an inadequate substitute for full habeas review of contested expedited removal orders.  He also contends that the 60-day limit is not jurisdictional and should be equitably tolled to allow his constitutional challenge to proceed.  Dugdale points to Holland v. Florida, where the Supreme Court found that the Antiterrorism and Effective Death Penalty Act's one-year bar on habeas petitions could be tolled.  560 U.S. 631, 646 (2010) (finding that the one-year bar was not jurisdictional because the language was not detailed or emphatic, tolling would not impact the substance of the claim, and the one-year limit was not generous).  Yet, even while recognizing the harshness of the expedited removal system's procedural limitations, courts after Boumediene uniformly have held that they lack jurisdiction over constitutional challenges to that system. E.g., Khan v. Holder, 608 F.3d 325, 330 (7th Cir. 2010) (finding that it lacked jurisdiction to hear the merits of the claims even though "this procedure is fraught with risk of arbitrary, mistaken, or discriminatory behavior"); Garcia de Rincon, 539 F.3d at 1142 (declining to assert subject matter jurisdiction over a Suspension Clause claim even though the result was "draconian").  While the Court has similar reservations about the jurisdictional restraints of Section 1252(e), it will leave it to higher authorities to determine whether grounds exist to depart

from these holdings.[3] Accordingly, because Dugdale did not bring his action within the required 60-day time period, his constitutional claim must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

### III. Final Thoughts

Apart from running a small business out of his home and lying about it in order to return home from visiting his mother, the government does not appear to contest that Dugdale has long been an otherwise law-abiding and tax-paying resident of the United States. For his sins, he has been barred from the entering the country for five years, kept from his job, and separated from his ailing wife and American children. While the Court in no way condones Dugdale's conduct, a repentant Dugdale strikes it as a worthy candidate for further parole or whatever other discretionary dispensation may be available to him while he continues to litigate his claims. See, e.g., 8 U.S.C. § 1182 (noting the Attorney General may, in his discretion, parole an alien into the United States for humanitarian reasons or significant public benefit). That said, and for the foregoing reasons, the Court will grant Respondents' Motion to Dismiss in part, reserve judgment on Dugdale's claim he was never removed pursuant to a valid order, and deny the remainder of Dugdale's motions. The Court will issue an order consistent with this opinion.

*[signature]*
CHRISTOPHER R. COOPER
United States District Judge

Date: March 31, 2015

---

[3] The Court similarly rejects Dugdale's assertion that the Court has jurisdiction to hear his claims under the general habeas corpus statute, 28 U.S.C. § 2241. As indicated above, 8 U.S.C. § 1252(e) provides the exclusive avenue for challenging expedited removal orders.